584 So.2d 619 (1991)
SPECIAL DISABILITY TRUST FUND, DEPARTMENT OF LABOR & EMPLOYMENT SECURITY, STATE OF FLORIDA, Appellant,
v.
CHAMPION INTERNATIONAL and Wausau Insurance Companies, Appellees.
No. 90-2933.
District Court of Appeal of Florida, First District.
August 7, 1991.
Annemarie Craft, Sp. Disability Trust Fund, Tallahassee, for appellant.
Michael J. Rudicell, of McConnaughhay, Roland, Maida, Cherr & McCranie, P.A., Tallahassee, for appellees.
WIGGINTON, Judge.
The Special Disability Trust Fund appeals from the decision of the judge of compensation claims ordering the Fund to reimburse the employer/carrier for temporary disability, medical benefits and wage-loss benefits pursuant to section 440.49(2)(g), Florida Statutes (1983). Because we agree with the Fund that the claim for reimbursement was barred by lack of notice, we reverse.
Section 440.49(2)(g) provides in relevant part:
The right to reimbursement as provided in this subsection shall be barred unless written notice of claim of the right to such reimbursement is filed by the employer or carrier entitled to such reimbursement with the division at Tallahassee prior to 60 days after the order awarding excess permanent compensation with respect to which such reimbursement is claimed becomes final or, if payment of such excess permanent compensation is made by the employer or carrier without an award, prior to 60 days after the date the first payment of excess compensation for the permanent disability was made.
In turn, section 440.49(2)(b)3. defines "excess permanent compensation" as
that compensation for permanent impairment, wage-loss benefits, or permanent total disability or death benefits for which the employer or carrier is otherwise entitled to reimbursement from the Special Disability Trust Fund.
In the instant case, claimant sustained a compensable injury to her lower back on December 28, 1983, while employed with St. Regis Corporation, the employer herein. Prior to her injury, claimant was already suffering from an earlier back injury for *620 which she was receiving successful treatment.
Claimant was initially treated by Dr. Zorn whose notes expressed his opinion that she "probably" reached MMI around July 8, 1985, at which time she had a ten percent impairment of the body as a whole. After rendering that opinion, Dr. Zorn continued to treat claimant and she continued to suffer great difficulty with her back, which was apparently exacerbated in November 1985. Claimant was later hospitalized in 1987 for incapacitating low back pain by another treating physician. She also was referred to a psychiatrist for symptoms of depression for which she was hospitalized in July 1987. These latter physicians expressed the opinion that claimant reached MMI with regard to her back on October 27, 1987, and psychiatrically, in April 1988.
Meanwhile, the employer/carrier accepted the claim as compensable and paid benefits accordingly. Following the initial indication of MMI given by Dr. Zorn, the employer/carrier instituted payment of wage-loss benefits. While there is no evidence as to when exactly the first payment of wage loss was made following Dr. Zorn's opinion as to MMI, the record reflects the payments of wage loss were made from September through December 1986 totalling approximately $16,700. The employer/carrier thereafter reinstated temporary total disability benefits while claimant was undergoing rehabilitation and ultimately accepted her as permanently and totally disabled on the basis of the finding of psychiatric impairment. This acceptance was retroactive to April 26, 1988, the date given as psychiatric MMI.
On January 11, 1988, a notice of claim was sent to the Special Disability Trust Fund by the employer/carrier. Receipt by the Fund was acknowledged on January 15. However, the Fund denied the claim and a hearing was held to determine entitlement to reimbursement. The employer/carrier sought full payment of reimbursement from the Fund including 50 percent of all temporary total disability and medical benefits up to $10,000, and 100 percent thereafter, and all PTD benefits paid in excess of 175 weeks. It was the Fund's position that the claim was barred in its entirety because it was not filed within 60 days of the first payment of excess compensation, relying on the employer/carrier's earlier payment of wage-loss benefits. Alternatively, the Fund argued the claim was barred except for PTD benefits in excess of 175 weeks pursuant to section 440.49(2)(c)3.
The JCC entered his order finding that section 440.49(2)(g) did not bar the claim for reimbursement. Based on the medical evidence, the judge concluded that this was a case of PTD, and even accepting the 1985 date of MMI given by Dr. Zorn, the claim was timely. He reasoned that a claim for reimbursement is timely if it is filed prior to 60 days after excess permanent compensation is paid. Since "excess permanent compensation" is defined in section 440.49 as the compensation for PTD and other enumerated benefits, and since in the case of PTD, reimbursement is due for all benefits paid after the first 175 weeks of disability, the claim was timely even if the earliest possible MMI date was used.
Alternatively, the JCC found that even assuming the claim was a wage-loss claim, MMI was not reached until the claimant reached psychiatric MMI on April 26, 1988. Therefore, all benefits paid pursuant to that time were considered temporary and the claim for reimbursement was timely. The JCC went on to distinguish this court's decision in Special Disability Trust Fund v. Florida Power Corporation, 558 So.2d 130 (Fla. 1st DCA 1990). The judge noted that the present case involved no stipulated MMI date and was not related solely to a wage loss claim. He noted that this case involved multiple MMI dates due to the existence of mental as well as physical problems.
On the contrary, we agree with the Fund that the judge's attempt to distinguish Florida Power Corp. amounts to a distinction without a difference. As a general rule, the failure to timely file a claim against the Fund results in a complete bar to all benefits. Special Disability Trust Fund v. Florida Power Corp.; Special *621 Disability Trust Fund v. Brevard County Board of Public Instruction, 9 FCR 164 (Feb. 2, 1975), cert. denied, 320 So.2d 392 (Fla. 1975). As was true in Florida Power Corp., it is undisputed herein that the industrial injury was affected by the claimant's preexisting condition causing a merger between the permanent preexisting condition and the permanency caused by the accident. Therefore, the wage-loss benefits paid by the employer/carrier in 1986 necessarily contained excess compensation thereby triggering the time period wherein the employer/carrier were obligated to notify the Fund of their right to reimbursement. The fact that a different MMI date was adopted by the judge, or that he alternatively treated this case as a PTD case from its inception did not revive the claim, as the clear intent and effect of section 440.49(2)(g) is that without timely notice, the claim is barred "and no further action by ANYONE can breath life into the right to claim reimbursement as to those benefits." Florida Power Corp. 558 So.2d at 131, citing to Special Disability Trust Fund v. Brevard County Board of Public Instruction. (Emphasis in original.)
An observation made by this court in General Tire Service v. Special Disability Trust Fund, 569 So.2d 481 (Fla. 1st DCA 1990), is particularly significant under the circumstances. In that case, we rejected the JCC's ruling that no permanent wage-loss benefits were paid because the carrier had retroactively accepted the claimant as PTD after paying wage-loss benefits for a period of over six months. In doing so, we noted that whether the employer and carrier should have accepted the claimant as PTD when he reached MMI is a matter of conjecture, "for the undisputed fact is that they did not and no claim was filed by the claimant objecting to this decision." 15 F.L.W. at D2441. Likewise, in the instant case, when the carrier was informed by Dr. Zorn that claimant reached MMI, it did not question such opinion but immediately began paying wage-loss benefits. Accordingly, it was the carrier's responsibility to thereafter notify the Fund in order "to protect the Fund against stale claims and to provide an opportunity for prompt investigation of the claim." Special Disability Trust Fund v. Jimmy Hart Masonry, 424 So.2d 884, 886 (Fla. 1st DCA 1982).
Consequently, the judge erred in ordering the Fund to reimburse temporary disability, medical benefits and wage-loss benefits. See Special Disability Trust Fund v. First National Insurance Company, 444 So.2d 1147 (Fla. 1st DCA 1984). He therefore also erred when he deemed previously paid wage-loss benefits to be temporary total disability benefits and ordered the Fund to reimburse accordingly. As the Fund concedes, the only benefits which should be ordered reimbursed are PTD benefits in excess of the first 175 weeks beginning on April 26, 1988. See section 440.49(2)(c)3.
REVERSED and REMANDED for further proceedings consistent with this opinion.
ALLEN and WOLF, JJ., concur.