PER CURIAM.
American Express and Constitution State Servicing Company, the employer and its insurance servicing agent (collectively, the E/SA), appeal a final workers’ compensation order denying a claim for reimbursement from the Special Disability Trust Fund for permanent total disability (PTD) benefits paid to an injured employee. The judge of compensation claims (JCC) found that the injured employee reached maximum medical improvement (MMI) on September 5, 1990, and denied the claim because the E/SA filed its claim more than two years after the MMI date, contrary to section 440.49(2)(g), Florida Statutes (1987).[1] The E/SA argues that there is no competent, substantial evidence (CSE) to support the JCC’s finding the employee reached MMI on September 5, 1990, because MMI was not achieved until September 30,1994, and that it therefore timely filed the claim under the statute. We disagree and affirm.
Following the employee’s industrial accident of February 22, 1989, the E/SA paid him temporary total disability benefits. On September 26, 1990, the treating orthopedic surgeon sent the E/SA a letter advising that the employee was “totally disabled and possibly permanently so since September 5,1990.” Nothing was specifically said in the letter regarding the employee’s MMI status. Nevertheless, the E/SA thereafter voluntarily reclassified the employee as permanently and totally disabled, retroactive to September 5, *60 1990, and commenced payment of PTD benefits.
In March 1994, the E/SA filed its claim for reimbursement from the Fund, and thereafter another treating physician prepared a report stating that the employee had reached MMI with a 42 percent permanent impairment as of September 30, 1994. The E/SA contends that this is the only medical evidence of MMI; therefore, there is no CSE supporting the JCC’s finding that MMI was reached on September 5, 1990, when the E/SA commenced paying PTD benefits.
Although the E/SA’s argument is not unreasonable, we do not believe that it was within the contemplation of the legislature, when it enacted section 440.49(2)(g), to authorize an E/SA to file a claim for reimbursement of PTD payments nearly three and one-half years following its commencement of such payments. The E/SA’s argument either ignores or overlooks the fact that the voluntary payment of PTD benefits is, in effect, an implied concession of MMI. In reaching our conclusion, we are strongly influenced by case law that interpreted the pre-1987 version of section 440.49(2)(g), which provided that a reimbursement claim would be barred unless it was filed
prior to 60 days after the order awarding the excess permanent compensation [i.e., wage loss or permanent partial or total disability benefits] ... becomes final or, if payment of such excess permanent compensation is made by the employer or carrier without an award, prior to 60 days after the date the first payment of excess compensation for the permanent disability was made.
§ 440.49(2)(g), Fla.Stat. (1985).
This court has construed the above language to mean that the time permitted for reimbursement cannot be revived by the E/SA’s establishment of a new MMI date. For example, in Special Disability Trust Fund v. Champion International, 584 So.2d 619 (Fla. 1st DCA 1991), this court reversed an order granting reimbursement to the employer and its insurance carrier (collectively, the E/C) on the ground that the claim filed was untimely. In that case, the doctor opined that the claimant was at MMI and the E/C began paying wage loss. The E/C later asserted that claimant was not, in fact, at MMI. This court held that the claim period could not be revived by adopting a different MMI date. The E/C had accepted the prior MMI date and it was on notice at that time of its duty to inform the Fund of its reimbursement claim.
The statute was similarly interpreted in Special Disability Trust Fund v. Westwind Transportation, 648 So.2d 830 (Fla. 1st DCA 1995), where the JCC determined that the original MMI date the E/SA had accepted, resulting in the payment of wage loss benefits, was a mistake. This court reversed the order granting reimbursement, noting that the absence of evidence in the record of MMI at the time wage loss payments were commenced was not significant. Whatever the basis was for accepting the original MMI date, we concluded that when the E/SA ceased paying temporary benefits and began paying wage loss, it had notice that this event triggered its duty to request reimbursement or lose it. See also Special Disability Trust Fund v. Florida Power Corp., 558 So.2d 130 (Fla. 1st DCA 1990) (new MMI date does not revive reimbursement claim time).
We recognize that the language of the two statutes is different in that the former links reimbursement to payment of permanent benefits, while section 440.49(2)(g) currently connects the claim to either MMI or the payment of permanent impairment benefits. Nevertheless, this difference is, insofar as the issue raised, superficial. In order to be entitled to any form of permanent impairment benefits, one must, pursuant to law, have already achieved MMI. For whatever reason, the E/SA elected to accept the employee as permanently and totally disabled, knowing full well that in order for him to be eligible for same, a showing of MMI was required. We consider our prior case law precluding an applicant from seeking reimbursement from the Fund to be equally applicable here. The basis for our holdings appears to be similar to the doctrine of equitable estoppel, which recognizes that a person may be precluded from maintaining a position inconsistent with another position *61 which was asserted at the same or a previous time to the prejudice of another. United Contractors, Inc. v. United Constr. Corp., 187 So.2d 695 (Fla. 2d DCA1966).
AFFIRMED.
BARFIELD, C.J., and ERVIN and DAVIS, JJ., concur.

. Section 440.49(2)(g) provides as follows:
The right to reimbursement as provided in this subsection shall be barred unless written notice of claim of the right to such reimbursement is filed by the employer or carrier entitled to such reimbursement with the division at Tallahassee within 2 years after the date the employee last reached maximum medical improvement, or within 2 years after the date of the first payment of compensation for permanent total disability, wage loss, or death, whichever is later.